AO 91 (Rev. 11/11) Criminal Complaint

# UNITED STATES DISTRICT COURT
## for the
### District of Oregon

FILED 01 JUN '17 15:19 USDC-ORP

| | |
|---|---|
| United States of America<br>v.<br>Christian Chaidez,<br><br>*Defendant(s)* | Case No.  '17-MJ-71 |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.
On or about the date(s) of **November 2016 to February 2017** in the county of **Marion** in the **_____** District of **Oregon**, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. §§ 841(a)(1) and 846 | Possession with Intent to Distribute Methamphetamine and Heroin; Conspiracy |

This criminal complaint is based on these facts:

See attached Affidavit of DEA Special Agent Adam Otte

☑ Continued on the attached sheet.

_____
Complainant's signature

Adam Otte, Special Agent, DEA
*Printed name and title*

Sworn to before me and signed in my presence.

Date: June 1, 2017

_____
Judge's signature

City and state: Portland, Oregon

John Jelderks, U.S. Magistrate Judge
*Printed name and title*

DISTRICT OF OREGON            )
                              ) ss.   AFFIDAVIT OF ADAM OTTE
COUNTY OF MULTNOMAH           )

## Affidavit in Support of a Criminal Complaint

I, Adam Otte, being first duly sworn, hereby depose and state as follows:

### Introduction and Agent Background

1. I am an "investigative or law enforcement officer of the United States" within the meaning of Title 18, United States Code, Section 2510(7). I am currently employed as a Special Agent with the Drug Enforcement Administration (DEA), United States Department of Justice, and have been so employed since 2004. In that capacity, I investigate violations of the Controlled Substances Act, Title 21, United States Code, Section 801, et. seq. Until September 2012, I was assigned to the Seattle Field Division. In September 2012, I was assigned to the Salem, Oregon Resident Office. I have completed sixteen (16) weeks of DEA Basic Agent training at the Justice Training Center and FBI Academy in Quantico, Virginia. I am familiar with investigations of drug trafficking organizations, methods of importation and distribution of controlled substances, and financial investigations. I have been a case agent on multiple investigations involving organizations trafficking several controlled substances to include marijuana, cocaine, heroin, methamphetamine and MDMA. I have been the lead case agent or a co-case agent on six previous wiretap investigations. In each of these investigations, I have participated in directing the course of the investigation. These investigations have resulted in the seizure of controlled substances as well as millions of dollars of United States currency and the federal prosecution of more than 100 defendants.

## Purpose of Affidavit

2.This affidavit is submitted to support a criminal complaint and arrest warrant for Christian Jensel Chaidez, Hispanic male, date of birth xx/xx/1985 (hereinafter "CHAIDEZ") for distribution of methamphetamine and heroin in violation of Title 21 United States Code, Section 841(a)(1) and conspiracy in violation of Title 21, United States Code, Section 846.

3.I have obtained the facts set forth in this affidavit through my personal participation in the investigation described below; from my review of recorded calls and meetings; from oral and written reports of other law enforcement officers; and, from records, documents and other evidence obtained during this investigation. I have obtained and read official reports prepared by law enforcement officers participating in this investigation and in other related investigations.

4.In May 2016, CS-3 reported to TFO Zuniga that s/he could purchase methamphetamine from a subject known as "Christian." Based on the information provided by CS-3, TFO Zuniga identified CHAIDEZ as the subject to whom CS-3 was likely referring. TFO Zuniga later showed CS-3 the Oregon Department of Motor Vehicles (DMV) photograph of CHAIDEZ to CS-3 who immediately recognized the photograph as depicting the subject CS-3 knows as Christian.

5.This affidavit will describe details related to the controlled purchases of methamphetamine from CHAIDEZ using a DEA confidential source referred to as CS-3.[1] For

---

[1] CS-3 was arrested by Salem DEA within the past few years for trafficking methamphetamine. CS-3 agreed to cooperate with officers following his/her arrest and provided information to law enforcement in hopes of receiving possible consideration for his/her pending criminal charges. Over the past two years, CS-3 has provided information related to drug traffickers in the Salem, Oregon, area. Based on results from the CS-3's information and independent investigations, I believe CS-3 has provided credible and reliable information regarding drug trafficking organizations. CS-3 has a criminal record that includes arrests for the

**Affidavit of DEA Special Agent Adam Otte****Page 2**

all of the controlled purchases described herein, officers searched CS-3 and his/her vehicle both prior to and after meeting with CHAIDEZ. Officers confirmed that CS-3 was not in possession of any drugs, weapons or significant sums of currency, other than currency provided by officers to make the drug purchases. Officers outfitted CS-3 with audio transmitting and recording devices. Officers maintained surveillance on CS-3 after the pre-buy search and followed CS-3 to the meet location. There were, times while CS-3 was in the parking lot at Platinum Styles, a barber shop operated by CHAIDEZ located on Silverton Road NE in Salem, and when CS-3 was inside Platinum Styles, where officers were unable to maintain surveillance on CS-3.

     6.     During the investigation, officers also provided CS-3 with a phone to use to contact CHAIDEZ. DEA subscribes to a service that allows officers to record all calls made to and received by this phone. This service also records the phone numbers in contact with the phone given to CS-3 and as such, officers have confirmed the phone numbers used by CHAIDEZ as described below. CS-3 agreed to the consensual recording of these phone calls.

### November 2016 – Purchase of Methamphetamine

     7.     On November 12, 2016, officers directed CS-3 to attempt to contact CHAIDEZ to discuss the possibility of a future purchase of methamphetamine. CS-3 called CHAIDEZ, who used telephone 503-602-3294 (referred to herein as "Chaidez Phone 1"), as directed by officers. Task Force Officer (TFO) Zuniga, a native Spanish speaker, has listened to the call and provided me with his interpretation. During the call, CS-3 told CHAIDEZ that s/he spoke to CS-3's friend. CHAIDEZ interrupted CS-3 and asked him/her to come to the shop to speak in person.

---

following: No Liability Insurance, Fail to Carry and Present License – Giving False Information –Miss Use of Identification Card – DUII, Disorderly Conduct, Delivery of Cocaine, and Delivery of Methamphetamine (charge is pending). CS-3's record includes convictions for the following: DUII, Resisting Arrest, and Alien Inadmissibility.

**Affidavit of DEA Special Agent Adam Otte**                                                                                               **Page 3**

Later that day, CS-3 reported to TFO Zuniga that s/he met CHAIDEZ at the Platinum Styles barber shop, a business operated by CHAIDEZ. CS-3 reported that s/he told CHAIDEZ that CS-3 had a customer who wanted one half pound of methamphetamine and CHAIDEZ quoted CS-3 a price of $2,500.

8. On November 14, 2016, CS-3 called CHAIDEZ as directed by officers. The call went unanswered. However, CHAIDEZ used Chaidez Phone 1 to return CS-3's call later. During this call, as interpreted by TFO Zuniga, CHAIDEZ told CS-3 that he had not called sooner because his guy with the "window" had not answered. CHAIDEZ informed CS-3 that he had talked to him (the supplier) and that he had "half of a house." CS-3 told CHAIDEZ that s/he would call CHAIDEZ back to confirm the deal. During this call, I believe CHAIDEZ used the term "window" and phrase "half of a house" to refer to ½ pound of methamphetamine. I know from my training and experience that "window" is a common term used to refer to methamphetamine, likely due to methamphetamine's appearance, which can resemble broken glass.

9. On November 16, 2016, officers began receiving court-authorized geolocation data for Chaidez Phone 1 for a 30-day period. On November 17, 2016 at 12:56 p.m., as directed by officers, CS-3 called CHAIDEZ at Chaidez Phone 1 to arrange a purchase ½ pound of methamphetamine. During the call, as interpreted by TFO Zuniga, CHAIDEZ explained that his source had ½ pound or full pound quantities available for CS-3. CS-3 explained that s/he would check with his/her customer and call CHAIDEZ back. Minutes later, CS-3 called CHAIDEZ at Chaidez Phone 1 and explained that CS-3's customer only brought enough money for ½ pound. The two agreed to meet at CHAIDEZ's shop.

10.     Officers had previously established surveillance at CHAIDEZ's shop, the Platinum Styles barber shop. Court-authorized geolocation data showed that Chaidez Phone 1 was at/near this location. At 1:12 p.m., TFO Carney observed a black Scion sedan exit the parking lot and travel southbound. Minutes later, TFO Zuniga observed a black Scion sedan and recognized the driver as CHAIDEZ. Officers lost contact with the Scion. During this time, officers followed CS-3 to CHAIDEZ's barber shop where CS-3 went inside, spoke to a female briefly then waited in his/her vehicle. While CS-3 was in the shop, officers were unable to maintain surveillance on him/her. Officers were able to maintain surveillance on CS-3's vehicle during most of the operation, depending on the flow of traffic.

11.     At 1:48 p.m., TFO Carney observed the black Scion arrive at the barber shop. TFO Carney observed the male driver and sole occupant (believed to be and hereinafter referred to as CHAIDEZ) then retrieve an item from the trunk of the Scion and walk over to CS-3's vehicle. Via the audio transmitter, TFO Zuniga then heard a male greet CS-3. TFO Zuniga recognized the voice of the male to be the same as the voice of the user of Chaidez Phone 1, i.e., CHAIDEZ. TFO Zuniga heard CS-3 and CHAIDEZ have a conversation about their transaction. At 1:50 p.m., CHAIDEZ exited CS-3's vehicle and entered the barber shop.

12.     Officers then followed CS-3 to a separate location where CS-3 turned over approximately ½ pound of suspected methamphetamine.[2] CS-3 reported that CHAIDEZ entered the passenger side of CS-3's vehicle and gave CS-3 a cardboard box (which contained the methamphetamine) in exchange for the money that officers had provided CS-3. CS-3 reported that CHAIDEZ told him/her that CHAIDEZ's supplier was willing to look for better quality

---

[2] Officers performed a field test which provided a presumptive positive result for the presence of methamphetamine.

**Affidavit of DEA Special Agent Adam Otte**                                                                    Page 5

methamphetamine if CS-3 did not like the methamphetamine. TFO Zuniga noted that CS-3's description of events was consistent with the conversation he heard via the audio transmitter.

### December 2016 – Purchase of Methamphetamine

13. On December 9, 2016, officers directed CS-3 to contact CHAIDEZ to attempt to arrange the purchase of ½ pound of methamphetamine. At 2:44 p.m., CS-3 called CHAIDEZ at Chaidez Phone 1. During this call, as interpreted by TFO Zuniga, CS-3 explained that his/her friend wanted the same thing (referring to ½ pound of methamphetamine). CHAIDEZ asked if CS-3 wanted "only a half." CS-3 agreed. CHAIDEZ explained that he would order the "window" and asked what time CS-3 wanted it. CS-3 told CHAIDEZ to let him/her know when to arrive. The two agreed to speak later. CS-3 and CHAIDEZ exchanged additional phone calls and agreed to meet at Platinum Styles.

14. Officers later followed CS-3 to Platinum Styles, arriving at 4:19 p.m. Upon arriving, CS-3 called CHAIDEZ at Chaidez Phone 1 and asked if CHAIDEZ would come out. CHAIDEZ asked CS-3 to come inside. CS-3 then entered the business and TFO Zuniga listened to CS-3 via the audio transmitter. At 4:22 p.m., TFO Zuniga called CS-3 and confirmed that CHAIDEZ was inside. At 4:24 p.m., TFO Zuniga heard via the transmitter what sounded like the door to the business opening followed by the sounds of heels or hard-souled shoes walking through the business. Approximately 30 seconds later, CS-3 met briefly with CHAIDEZ who instructed CS-3 to wait outside. CS-3 returned to his/her vehicle. Approximately 30 seconds later, a male could be heard getting into CS-3's vehicle. CS-3 asked the male if he had the "stuff" and then said "it looks beautiful." CS-3 asked the male if it was a "half." The male responded that he did not know. CS-3 then told the male to "count the money" and to "make sure it's twenty-five hundred." TFO Zuniga then heard the sound of paper shuffling (believed to

**Affidavit of DEA Special Agent Adam Otte**                                                                  **Page 6**

be the sound of the male counting the money). The male told CS-3 his name was "Brian." The two separated and officers followed CS-3 to a separate location where CS-3 turned over approximately ½ pound of methamphetamine.

15. CS-3 reported to officers that upon arriving at the shop, CHAIDEZ asked CS-3 to come inside. CS-3 reported that after waiting in the lobby while CHAIDEZ was cutting hair, a female whom CS-3 had previously identified as Catherine Villalta entered the shop. Moments later, CHAIDEZ instructed CS-3 to wait outside. CS-3 reported that s/he observed Villalta meet with "Brian" behind a wall in the business. CS-3 then returned to his/her vehicle and waited until "Brian" arrived and gave CS-3 the methamphetamine in exchange for the money.

**February 2017 – Purchase of Heroin**

16. On December 28, 2016, as directed by officers, CS-3 placed two calls to Chaidez Phone 1, both of which went unanswered. Approximately 30 minutes later, at 1:21 p.m., CS-3 received a call from 503-856-4124, referred to as "Chaidez Phone 2." CS-3, and TFO Zuniga who listened to the call, recognized CHAIDEZ's voice.

17. On February 21, 2017 at 12:27 p.m., CS-3 called CHAIDEZ at Chaidez Phone 2 as directed by officers. During the call CS-3 explained that his/her friend had called and wanted to know if it was "possible to get a sample of chocolates, uh tomorrow evening he said." CHAIDEZ asked, "How many pieces?" CS-3 explained that s/he did not know but would let CHAIDEZ know. During this call CS-3 used "chocolates" to refer to heroin. At 12:54 p.m., CS-3 received a call from CHAIDEZ and CS-3 explained that his/her friend wanted "two" (two pieces of heroin) the following afternoon.

18. Due to unforeseen factors, officers were unable to conduct the controlled purchase operation on February 22, 2017 as originally planned. CS-3 called CHAIDEZ on Chaidez Phone 2 that night and the two agreed to talk the following day.

19. On February 23, 2017 at 2:13 p.m., CS-3 received a call from Chaidez Phone 2. During this call CS-3 said, "Hey, now this time is a yes for tomorrow. My friend called me already, he says tomorrow is a yes, it can be done tomorrow." CHAIDEZ confirmed and said, "Okay then, done deal then." Later CS-3 said, "Yes, with the same, with two pieces of chocolate like we agreed." CHAIDEZ replied, "Okay, that's fine."

20. On February 24, 2017, officers established surveillance at Platinum Styles, CHAIDEZ's barber shop. CS-3 exchanged a couple phone calls with CHAIDEZ to arrange to meet at the shop. Shortly after 1:00 p.m., officers followed CS-3 to Platinum Styles. Upon arriving, CS-3 went inside the shop. TFOs Zuniga and Salas, both native Spanish speakers, listened to conversations in CS-3's vicinity via the audio transmitter during the operation. CS-3 remained at the barber shop for several hours, but did not remain inside the entire time.

21. At 4:31 p.m., Sgt. Garrett observed a dark colored Nissan sedan arrive at Platinum Styles. Shortly thereafter, CS-3 (who was inside the shop at the time) reported to TFO Zuniga that the female supplier had arrived in a black Nissan bearing Oregon license plate 147JTE (i.e., the "Altima"). CS-3 then reported to officers that the female had only brought one piece of heroin rather than two. CS-3 reported that the female would leave to get the other piece.

22. At 4:35 p.m., Sgt. Garrett observed the Altima depart. Officers lost contact with the vehicle briefly before reacquiring surveillance. SA Wolters observed that the Altima was occupied only by a female driver. Officers followed the Altima into Woodburn, Oregon and then lost contact.

**Affidavit of DEA Special Agent Adam Otte**                                                      **Page 8**

23. At 5:29 p.m., Sgt. Garrett observed the Altima travel west on Silverton Road back to the barber shop. TFO Zuniga and TFO Salas observed the Altima pull into the parking lot out of view. Moments later, TFO Zuniga and TFO Salas observed CHAIDEZ exit the barber shop, walk out of view, then walk toward CS-3's vehicle holding an item in his hand. CS-3 was sitting in his/her vehicle at this time. Officers then observed CHAIDEZ and CS-3 walk back to the barber shop. Two minutes later, officers observed CS-3 exit the barber shop carrying an item in his/her hand similar in appearance to what CHAIDEZ had previously been carrying.

24. Officers then followed CS-3 to a separate location where CS-3 turned over approximately two pieces of heroin (a piece is approximately 25 grams, a common measurement in heroin distribution). CS-3 reported that s/he obtained the heroin from CHAIDEZ in exchange for the DEA funds officers had previously given to CS-3.

_____
ADAM W. OTTE
Special Agent, Drug Enforcement Administration

Sworn to and subscribed before me this 1st day of June, 2017.

_____
HONORABLE JOHN JELDERKS
UNITED STATES MAGISTRATE JUDGE